# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| WILMOT HOWARD | : | DOCKET NO. 2:05-cv-1553<br>Section P |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| ALBERTO GONZALES, ET AL. | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 on by *pro se* petitioner, Wilmot Howard. In his petition, the petitioner challenges his continued detention pursuant to INA § 241(a)(6) and argues that there is no significant likelihood of his being removed in the reasonably foreseeable future. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

After reviewing the facts alleged in the petition and the answer by the respondent, it was determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition. Accordingly, on April 6, 2006 an evidentiary hearing was held before the undersigned for the express purpose of hearing evidence on the issue of whether there is a significant likelihood of removing petitioner in the reasonably foreseeable future. [doc. 13].

## FACTUAL SUMMARY

Petitioner is a native and citizen of Liberia who entered the United States as an immigrant on December 26, 2997.

On July 17, 2002, petitioner was convicted in a North Carolina state court for possession of a controlled substance and was sentenced to 4-5 month suspended term of imprisonment and placed on

probation for three years. Based upon the petitioner's conviction, the United States Immigration & Customs Enforcement agency (ICE) apparently began removal proceedings against him. He was taken into custody by ICE on October 8, 2004.

On February 7, 2005, an order of removal was issued against petitioner. He waived his right to appeal, and the removal order became final on that date. Petitioner has been in post-removal-order custody since that time. *See* Stipulations by Counsel.

The petitioner claims that he is not likely to be removed in the reasonably foreseeable future and that he should be released from post-removal-order custody. In support of his position, he points to the length of his detention, the indication by a Liberian official in November, 2005 that a travel document would not be issued for petitioner because of the equities in his case[1], and the subsequent lack of definitive answers to the request for a travel document for petitioner.

The respondent argues that ICE is currently working with the Liberian Consulate to arrange for a charter flight to Liberia in order to repatriate Liberian nationals, including petitioner. It is expected that this charter flight will take place in late April or early May, 2006. Thus, it is the position of the respondent that there is a significant likelihood of removing petitioner in the reasonably foreseeable future.

## **LAW AND ANALYSIS**

Petitioner has been in post-removal-order detention pursuant to INA § 241(a)(6) for more than twelve months. The issue before the court is whether his removal is likely to occur in the reasonably foreseeable future.

In *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), the United States Supreme Court found that INA §241(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period

---

[1] *See* Joint Exhibit 3.

detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention for INS detainees following a final order of removal. *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Because petitioner has been in post-removal-order detention for a period of time greater than 6 months, there is no longer a presumption of reasonableness attached to his detention. While this does not mean that petitioner is automatically entitled to be released from post-removal-order detention, it does allow a *habeas* court to inquire into "whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 121 S.Ct at 2504. In *Zadvydas*, the Supreme Court stated that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."

The respondent conceded at the hearing that, in light of the facts of this case, the petitioner has met his initial burden under *Zadvydas*. Accordingly, the burden now shifts to the government to respond with evidence sufficient to rebut the petitioner's showing. *Zadvydas*, 121 S.Ct. at 2505.

In order to satisfy its burden, the government presented evidence that beginning in September, 2005, Liberia developed a new procedure for repatriating its nationals which includes a charter flight
3

and face to face interviews with the aliens immediately prior to the charter flight.[2] Because of this new procedure, Mr. John Hartnett, petitioner's deportation officer, testified that the Liberian Consulate would not discuss with him the travel document request for petitioner, preferring instead to defer individual decisions until the charter flight is arranged and the aliens could be interviewed.[3] Mr. Hartnett further testified that for the last three months he has been working with ICE's headquarters to get a charter flight to Liberia scheduled. Pursuant to a March 2, 2006 e-mail communication from Ashly Ivery, an ICE headquarter's employee, a tentative date of April or May, 2006 has been set for the charter flight. *See* Joint Exhibit 1. Mr. Hartnett stated that petitioner is on the list of Liberian nationals to be interviewed immediately prior to the upcoming charter flight. Because petitioner entered this country with a Liberian passport, the government does not foresee any difficulty in securing a travel document for petitioner after his interview. Therefore, the government argues that there is a significant likelihood of petitioner's being removed in the reasonably foreseeable future.

The court finds that the government has presented credible evidence that a charter flight will be scheduled for the repatriation of Liberian nationals before the end of May, 2006 and that petitioner will be removed to Liberia on this flight. Because the evidence supports a finding that petitioner will be removed in the reasonably foreseeable future, the court finds that petitioner's continued detention during this time is necessary to secure his removal. However, if petitioner is not removed by the end of May, 2006, the court finds that the length of his detention will exceed what is reasonably necessary

---

[2] Petitioner was apparently scheduled to be interviewed prior to the September, 2005 charter flight to Liberia, but the Bureau of Prisons would not release him from Oakdale at that time because of a chicken pox quarantine which was in effect.

[3] The evidence offered by the government at the hearing also explained that Mr. Christopher Nippy is the only Liberian Consulate official who is authorized to issue travel documents for Liberian aliens who are being deported from the United States and that Mr. Nippy has been in Liberia since the September, 2005 charter flight. It was another employee of the Liberian Consulate, Mr. Wallace, who in November, 2005 had expressed reservations about issuing a travel document for petitioner. *See* Joint Exhibit 3. However, the government argued that since Mr. Wallace is not authorized to make a decision about a travel document for petitioner, his reservations should not be given any weight.

to secure his removal, that his detention will be no longer authorized by statute, and that he should be released pending his eventual removal from the United States.

For the reasons stated above,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be GRANTED to the extent that petitioner be released from custody[4] if not removed on or before May 31, 2006. Otherwise the petition is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 10th day of April, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[4] In the event that ICE is not able to remove petitioner on or before May 31, 2006, his release may, of course, be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and he may, no doubt, be returned to custody upon violation of those conditions. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2504 (2001); 8 U.S.C. § 1231(a)(3).